UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------
MARTIN J. WALSH, Secretary of Labor, United States  :
Department of Labor,

                                 :

                Plaintiff,

            v.                      :  Case No. 23-cv-1573

SUNRISE HOME CARE INC. AND ELSA SILVA,    :

                Defendants.       :
------------------------------------------------------------------

## THE SECRETARY OF LABOR'S MEMORANDUM OF LAW IN SUPPORT OF A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

SEEMA NANDA
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

ALLISON L. BOWLES
Senior Trial Attorney

U.S. Department of Labor
Office of the Solicitor
201 Varick Street, Room 983
New York, NY 10014

*Attorneys for Plaintiff Martin J. Walsh,*
*Secretary of Labor*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND .......................................................................................... 3

ARGUMENT ............................................................................................... 5

I.    The Secretary is Likely to Succeed on the Merits of his Claims. ................................... 6

   A.   The Secretary is likely to succeed on his claim that Defendants have violated section 11(a) of the FLSA by obstructing the Secretary's investigation. ................................ 6

   B.   The Secretary is likely to succeed on his claim that Defendants violated the FLSA's anti-retaliation provision. .......................................................................... 8

      1.   Participating Fully in the Secretary's Investigation is FLSA-Protected Activity . 9

         a.   Speaking Truthfully to the DOL is Protected Activity .................................. 10

         b.   Receipt of Back Wages Owed as the Result of an Investigation is Protected Activity. ................................................................................ 12

      2.   Defendants Engaged in Numerous Adverse Employment Actions. ................... 14

      3.   The Causal Connection Between Protected Activity and the Adverse Actions Is Clear. ................................................................................ 17

II.   Sunrise HHAs, the Department of Labor, and the Public Will Suffer Irreparable Harm Absent a Temporary Restraining Order. ..................................................... 19

   A.   Sunrise HHAs will suffer irreparable harm absent an injunction. ......................... 19

   B.   The Secretary's enforcement of the FLSA will suffer irreparable harm without an injunction. ................................................................................ 22

III.  The Balance of Equities and Public Interest Strongly Favors Issuance of an Injunction. ......................................................................................... 23

   A.   Defendants will face no harm from the Secretary's requested relief. ..................... 23

   B.   The public interest weighs heavily in favor of granting the Secretary's requested relief. ................................................................................ 25

CONCLUSION .......................................................................................... 26

TABLE OF AUTHORITIES

Page(s)

Cases

*Black v. Cakor Restaurant, Inc.*,
  2022 WL 17689840 (S.D.N.Y. Dec. 15, 2022) .................................................................Passim

*Bowen v. M. Caratan, Inc.*,
  142 F. Supp. 3d 1007 (E.D. Cal. 2015) ............................................................................... 12

*Brennan v. Maxey's Yamaha, Inc.*,
  513 F.2d 179 (8th Cir. 1975) .............................................................................. 13, 14, 16

*Brock v. Richardson*,
  812 F.2d 121 (3d Cir. 1987) ................................................................................................. 18

*Brooklyn Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945) ............................................................................................................... 8

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006) ............................................................................................................... 14

*Centeno-Bernuy v. Perry*,
  302 F. Supp. 2d 128 (W.D.N.Y. 2003).............................................................. 20, 21, 22, 24

*Citicorp Indus. Credit, Inc. v. Brock*,
  483 U.S. 27 (1987) ............................................................................................................... 26

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010) ..................................................................................................... 5

*Donovan v. Rockwell Tire & Fuel, Inc.*,
  1982 WL 2120 (M.D. N.C. Mar. 30, 1982)......................................................................... 13

*Donovan v. Sovereign Security, Ltd.*,
  726 F. 2d 55 (2d Cir. 1984) ................................................................................................. 26

*Figueroa v. Cactus Mexican Grill, LLC*,
  575 F. Supp. 3d 208 ............................................................................................................. 17

*Garcia v. Lee*,
  2010 WL 2102903 (E.D.N.Y. May 26, 2010)....................................................................... 22

*Grant River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60 (2d Cir. 2007) ..................................................................................................... 5

*Greathouse v. JHS Sec. Inc.*,
    784 F.3d 105 (2d Cir. 2015) ....................................................................... 9

*Harris v. ACME Universal, Inc.*,
    2014 WL 3907107 ................................................................................... 16

*Herman v. Fashion Headquarters, Inc.*,
    992 F. Supp. 677 (S.D.N.Y. 1998) ............................................................ 26

*Hodgson v. Yinger*,
    1971 WL 762 (S.D. Fla. July 9, 1971) ......................................... 14, 16, 17

*Holt v. Continental Grp., Inc.*,
    708 F.2d 87 (2d Cir. 1983) ........................................................................ 21

*Hugler v. Foreclosure Connection, Inc.*,
    2017 WL 2168202 (D. Utah May 8, 2017) ............................................... 18

*Hui Lin v. Great Rose Fashion, Inc.*,
    2009 WL 1544749 (E.D.N.Y. June 3, 2009) .......................................... 9, 23

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
    563 U.S. 1 (2011) ................................................................... 7, 9, 17, 22

*Lambert v. Ackerley*,
    180 F.3d 997 (9th Cir. 1999) .................................................................... 15

*Lawrence v. Sol G. Atlas Realty Co., Inc.*
    2016 WL 7335612 (E.D.N.Y. Dec. 16, 2016) ..................................... 11, 13

*Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*,
    965 F.2d 1224 (2d Cir. 1992) ..................................................................... 5

*Marshall v. Chala Enters., Inc.*,
    645 F.2d 799 (9th Cir. 1981) .................................................................... 25

*Marshall v. Parking Co. of Am.-Denver*,
    670 F.2d 141 (10th Cir. 1982) .................................................................. 13

*Marshall v. Quik-Trip Corp.*,
    672 F.2d 801 (10th Cir. 1982) ............................................................ 14, 16

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ................................................................................... 9

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010) .......................................................................... Passim

*N.L.R.B. v. ABC Indus. Laundry, LLC*,
  355 NLRB 88 (2010) ......................................................................................... 15

*N.L.R.B. v. Ritchie Manuf. Co.*,
  354 F.2d 90 (8th Cir. 1996) ............................................................................... 12

*N.L.R.B. v. Scrivener*,
  405 U.S. 117 (1972) ...................................................................................... 9, 11

*Patterson v. McCarron*
  2001 WL 1488122 (S.D.N.Y. Nov. 21, 2001) .................................................. 11

*Perez v. AAA Buffet, Inc.*,
  2016 WL 9526503 (W.D. Wash. Dec. 20, 2016) ............................................. 25

Perez v. Abbas,
  2015 WL 2250436 (N.D. Cal. May 13, 2015) .................................................... 7

*Perez v. ACME Universal, Inc.*,
  2014 WL 1378241 (D. Guam Apr. 8, 2014) ..................................................... 11

*Perez v. Alkanan, Inc.*
  2013 WL 12129857 (C.D. Cal. Dec. 16, 2013) ................................................ 22

*Perez v. BabyVision Inc.*,
  2014 WL 5280392 (S.D.N.Y. Sept. 30, 2014) .................................................... 7

*Perez v. Fatima/Zahra, Inc.*, No. C,
  2014 WL 2154092 (N.D. Cal. May 22, 2014) .............................................. passim

*Perez v. J&L Metal Polishing, Inc.*,
  2016 WL 7655766 (C.D. Cal. May 9, 2016) ..................................................... 25

*Perez v. U.S. Postal Serv.*,
  76 F. Supp. 3d 1168 (OSH Act) ....................................................................... 11

*Reich v. Hoy Shoe Co., Inc.*,
  32 F.3d 361 (8th Cir. 1994) ............................................................................... 12

*Roviaro v. United States*,
  353 U.S. 53 (1957) ............................................................................................ 15

*Saffels v. Rice*,
    40 F.3d 1546 (8th Cir. 1994) ................................................................................ 12

*Sauers v. Salt Lake Cty.*,
    1 F.3d 1122 (10th Cir. 1993) ................................................................................ 12

*Scalia v. F.W. Webb Co.*,
    2021 WL 1565508 (D. Mass. Apr. 21, 2021) .................................................... 12, 15

*Scalia v. Unforgettable Coatings, Inc.*,
    455 F. Supp. 3d 987 (D. Nev. 2020) .............................................................. Passim

*Secretary v. Casey Truck Sales, Inc.*,
    839 F.2d 872 (2d Cir. 1988) .......................................................................... Passim

*Secretary v. Robert DeMario Jewelry, Inc.*,
    361 U.S. 288 (1960) ....................................................................................... Passim

*Secretary v. SCA Rest. Corp.*,
    938 F. Supp. 2d 380 (E.D.N.Y. 2013) ................................................................. 12

*Secretary v. SCA Rest. Corp.*,
    2014 WL 996249 (E.D.N.Y. Mar. 14, 2014) ....................................................... 25

*Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*,
    468 F. App'x 43 (2d Cir. 2012) ........................................................................... 23

*Torres v. Gristede's Operating Corp.*,
    628 F. Supp. 2d 447 (S.D.N.Y. 2008) ................................................................. 14

*United States v. Pugh*,
    2007 WL 3539435 (E.D.N.Y. Nov. 14, 2007) ..................................................... 24

*Uronis v. Cabot Oil & Gas Corp.*,
    49 F.4th 263 (3d Cir. 2022) .................................................................................. 10

*Walsh v. ABC 31st Street, Inc.*,
    1:22-cv-03920-LDH-RLM, Memorandum and Order, (E.D.N.Y. July 7, 2022)..................19

*Walsh v. Advantix Logistics, Corp.*,
    2:22-cv-02257, Order Granting Temporary Restraining Order and Order to Show Cause
    (D N.J. April 19, 2022),...................................................................................19

*Walsh v. Berkshire Nursery & Supply Corp.*,
    7:23-cv-00275-VB, Order Granting Temporary Restraining Order and Order to Show Cause
    (S.D.N.Y. Jan. 18, 2023)...................................................................................19

*Walsh v. Caribbean Island Rest. & Bar, LLC*,
  2022 WL 2713725 (E.D.N.Y. July 13, 2022)..........................................................23

*Walsh v. SerenityCare LLC,*
  2022 WL 17974467 (W.D. Pa. Dec. 28, 2022) .......................................... 14, 16, 18

*Wright v. Stern,*
  450 F. Supp. 2d 335 (S.D.N.Y. 2006) ...................................................................14

Statutes

29 U.S.C. § 201.............................................................................................................. 7
29 U.S.C. § 202(a) ....................................................................................................... 26
29 U.S.C. § 206............................................................................................................ 21
29 U.S.C. § 207............................................................................................................ 21
29 U.S.C. § 211(a) ..................................................................................................Passim
29 U.S.C. § 215(a)(3)...............................................................................................Passim

Rules

Fed. R. Civ. P 65 ........................................................................................................... 9

Plaintiff Martin J. Walsh, Secretary of Labor, U.S. Department of Labor (the "Secretary"), respectfully submits this memorandum of law in support of his motion for a temporary restraining order and order to show cause enjoining Defendants Sunrise Home Care Inc. ("Sunrise") and Elsa Silva (collectively, "Defendants") from engaging in unlawful obstruction and retaliatory conduct in violation of the investigation and anti-retaliation provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*

## PRELIMINARY STATEMENT

This Court should immediately restrain Defendants from illegally retaliating against employees through a concerted campaign of intimidation, coercion and threats designed to interfere with an ongoing investigation and deny vulnerable workers their rights under federal labor law. On January 5, 2023, the United States Department of Labor's Wage and Hour Division ("WHD") made an unannounced visit to Defendants' place of business, where they met with Defendant Silva and informed her that WHD had commenced an investigation into Defendants' compliance with the Fair Labor Standards Act (the "FLSA" or the "Act"). Almost immediately thereafter, Defendants began a four-part scheme to obstruct the WHD's ability to uncover information about Defendants' pay practices, including direct retaliation against its employees. In fact, just eight days after the WHD opened its investigation, the Secretary's counsel contacted Defendants' attorney about reports of retaliation to ensure that it stopped immediately. Nevertheless, Defendants have continued to harass Sunrise HHAs about the investigation.

In the weeks following WHD's visit to Defendants' office, Defendant Silva engaged in a four-pronged assault on the home health aides that perform work for Sunrise ("Sunrise HHAs" or "HHAs") specifically designed to intimidate, coerce and threaten them. First, Defendant Silva repeatedly contacted Sunrise HHAs about the WHD's investigation, simultaneously asking them

about their contacts with the WHD and making a concerted effort to identify the presumed complainant responsible for the investigation. Second, Defendant Silva has attempted to control and manipulate Sunrise HHAs' communications with the WHD by directing the HHAs to lie – both verbally and in writing – about their hours worked and wages paid. Third, Defendant Silva lied to HHAs, falsely advising them any monies owing as a result of the investigation belonged to Defendants, threatened that they would have to kickback, or return, any such money, and pressured HHAs to renounce preemptively their right to receive (and keep) the same. Finally, Defendants threatened negative consequences, *e.g.*, closing the business, job losses, if Defendants had to pay overtime wages, as well as legal proceedings, including if HHAs told WHD certain information.

Defendants' conduct plainly constitutes egregious and willful retaliation against employees in violation of the investigation and anti-retaliation provisions of the FLSA. This type of unlawful action deters workers from asserting their rights, frustrates the government's efforts to enforce the law, and undermines the public interest in effective enforcement of the Act. Directing employees to lie to the government and/or return money they are owned not only interferes with an ongoing governmental investigation, but would perpetrate a fraud that would subvert effective enforcement of the Act and deny workers the full benefit of their hard-earned labor. Absent relief, this group of vulnerable workers' fragile place in the economy is made more insecure.

Accordingly, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Secretary moves for: (1) a temporary restraining order, to be in effect until a hearing is held concerning a preliminary injunction; and (2) a preliminary injunction. Concurrently with the request for relief, the Secretary has filed a complaint against Defendants, alleging that Defendants' obstruction and retaliation violate sections 11(a) and 15(a)(3) of the FLSA, 29 U.S.C. §§ 211(a), 215(a)(3). The

Secretary requests this Court grant immediate relief to remedy and end Defendants' illegal conduct and protect Sunrise HHAs during the pendency of this action.

## <u>BACKGROUND</u>

Defendant Sunrise is a home care agency that provides home health aide services to elderly clients in and around Putnam County, New York. Declaration of Gisselle Alarcon dated Feb. 24, 2023 ("Alarcon Decl.") ¶¶ 7-8. Defendant Elsa Silva owns Sunrise and oversees its operations. *Id.* ¶ 9. Silva hires and fires the HHAs who perform work for Sunrise, determines their hours and compensation, and directs their work. *Id.* As of January 2023, there are approximately 24 individuals working as HHAs for Sunrise. *Id.* ¶ 12.

In January 2023, WHD began an investigation to determine whether Sunrise was complying with the FLSA. *Id.* ¶ 10. As part of the ongoing investigation, WHD has requested documents from the employer and conducted interviews, including with Defendants. *Id.* ¶¶ 10-11. On January 5, 2023, investigators from the WHD paid an unannounced visit to Defendants at their corporate office in Brewster, New York. *Id.* ¶ 10. During this meeting, Defendant Silva admitted: (1) that HHAs sometimes work over 40 hours in a single workweek, and (2) that Defendants do not pay any overtime premium for hours over 40 worked in a single workweek. *Id.* ¶ 13. During the meeting, WHD provided Defendants various fact sheets, including one explaining the FLSA's anti-retaliation provision, which specifically notified them that "discharg[ing] or in any other manner discriminat[ing] against any employee" for cooperating in an investigation is a violation of the FLSA's anti-retaliation provision. *Id.* ¶ 14, Ex. A. WHD investigators also discussed the fact sheet with Defendants that day. *Id.* ¶ 15. Specifically, they explained to Defendants that it is illegal to retaliate or try to impede the investigation and that they must not ask HHAs about the content of WHD interviews including what questions WHD asked. *Id.*

3

Nevertheless, Defendants promptly initiated a targeted campaign to obstruct WHD's investigation through intimidation tactics, threats, and retaliation. Almost immediately after WHD's January 5th meeting with WHD, Defendant Silva began to contact HHAs about the investigation. *Id.* ¶¶ 16-22. During her communications with HHAs, she attempted to learn who had had contact with WHD. *Id.* ¶ 17. Notably, Silva took specific interest in identifying the presumed complainant to blame for the investigation and used numerous tactics to pressure HHAs for information. *Id.*

During her communications with HHAs, Defendant Silva also attempted to manipulate HHA's discussion of overtime hours and pay. First, Silva attempted to control and influence HHA's communications with WHD by coaching HHAs on what to say. *Id.* ¶¶ 18, 20-21. Egregiously, she instructed HHAs to lie to investigators about hours worked and wages paid. *Id.* ¶ 21. Specifically, Defendant Silva told HHAs what to tell WHD about overtime work, directing them to falsely state that they had agreed voluntarily to forego overtime premiums when they worked more than 40 hours in a single workweek. *Id.* She also pressured HHAs to put this same false information in writing. *Id.* Second, defendant Silva lied to HHAs, telling them that any unpaid monies owing as a result of WHD's investigation belonged to Defendants. *Id.* ¶ 22. She threatened that HHAs would have to kickback, or return, any monies owed as a result of the investigation, and pressured HHAs to agree to renounce their right to receive any monies that an investigation would show they are owed. *Id.* Finally, Defendant Silva threatened that if she was forced to pay overtime, she would have to close the business, and warned of legal action, including if HHAs told WHD certain information. *Id.* ¶¶ 19-20.

Just eight days after WHD commenced its investigation, an attorney for the Secretary contacted Defendants' counsel to report allegations of retaliation and ensure that it stop

immediately. Declaration of Allison L. Bowles dated Feb. 24, 2023 ¶ 2 ("Bowles Decl."). Yet, Defendant Silva's communications with Sunrise HHAs about the WHD investigation continued. Alarcon Decl. ¶ 17.

## ARGUMENT

This Court should enjoin Defendants from further retaliating against HHAs and interfering in the Secretary's enforcement of the Act. The standard for a temporary restraining order in this Circuit is essentially the same as for a preliminary injunction. *See, e.g.*, *Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (quoting unpublished district court opinion), *cert. denied*, 506 U.S. 953 (1992). Under this familiar standard, a preliminary injunction should be awarded when the movant demonstrates: (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010) (citing *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)). A showing of "[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Black v. Cakor Rest., Inc.*, 22-CV-1447 (VEC), slip. op., 2022 WL 17689840, at *6 (S.D.N.Y. Dec. 15, 2022) (quoting *Grant River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).

As set forth below, the Secretary easily meets all of the requirements for issuance of a temporary restraining order and preliminary injunction because: (1) the Secretary is likely to succeed on the merits of his claims that Defendants unlawfully interfered with the government's investigation and have retaliated against Sunrise HHAs for engaging in protected activity; (2)

Sunrise HHAs, the Secretary, and the public will suffer irreparable harm absent a temporary restraining order; and (3) the balance of equities and the public interest favors the Secretary being permitted to carry out his enforcement of the Act free from Defendants' obstruction and HHAs being free from Defendants' further retaliation and intimidation. All three factors strongly support awarding injunctive relief.

## I.   THE SECRETARY IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS.

### A.   The Secretary is likely to succeed on his claim that Defendants have violated section 11(a) of the FLSA by obstructing the Secretary's investigation.

The Secretary is likely to prevail in proving that Defendants have violated section 11(a) of the FLSA by obstructing the Secretary's investigation. 29 U.S.C. § 211(a). The FLSA grants the Secretary broad authority to investigate employers and to gather information from employees and others. Specifically, the FLSA provides:

> The Administrator or his designated representatives may investigate and gather data regarding the wages, hours and other conditions and practices of employment in any industry subject to this [Act], and may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this [Act] or which may aid in the enforcement of the provisions of this [Act].

29 U.S.C. § 211(a).  The Act grants these powers to question and interview employees because the FLSA "relies for enforcement of these standards, not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting *Secretary v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)). Thus, employee cooperation is necessary to allow the government to determine compliance with the FLSA and ensure a fair playing field of competition. Notably, section 11(a)

also directs the Secretary to seek injunctive relief to stop any employer who impedes the Secretary's investigation. *See id.* (The Secretary "shall bring all actions under section 17 . . . to restrain violations of this chapter."); *Perez v. BabyVision Inc.*, No. 14-CV-7821 KMK, 2014 WL 5280392, at *2 (S.D.N.Y. Sept. 30, 2014) (enjoining defendants from violating section 11(a) or obstructing the Secretary's investigation "in any way," including instructing any individual "not to speak to representatives of the Secretary"); *Perez v. Abbas*, No. 5:13-CV-04208-EJD, 2015 WL 2250436, at *10 (N.D. Cal. May 13, 2015) (same).

Given Defendants' interference and attempted manipulation, it is clear that they too appreciate the value of employee testimony in the FLSA enforcement system and thus, took targeted steps to deter and control HHAs' participation in WHD's investigation. Since WHD commenced its inspection, Defendants have repeatedly contacted HHAs about the investigation to inquire both about their contacts with WHD and to root out the presumed complainant to blame for the investigation. *Id.* ¶¶ 16-17. Defendants also have attempted to coerce HHAs, on threat of job loss, kickbacks and other negative consequences, to both lie to WHD about hours worked and wages paid and to agree to renounce their right to any back wages owed as a result of the investigation. *Id.* ¶¶ 19-20,22. More specifically, Defendant Silva has directed employees to falsely state – verbally and in writing – that they voluntarily agreed to forego overtime premiums for hours worked over 40 in a single workweek and/or refused the same, *id.* ¶ 21, when that is not the case[1]; the only agreement to that effect is that which stems from the "unequal bargaining power as between employer and employee," particularly for a vulnerable workforce like this one, Alarcon

---

[1] The protections of the FLSA, including the right to overtime, cannot be waived. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purpose of the Act. We are of the opinion that the same policy considerations which forbid waiver of the basic minimum and overtime wages under the Act also prohibit the wavier of the employee's right to liquidated damages.").

Decl. ¶ 8, long recognized by the Supreme Court. *Brooklyn Sav. Bank*, 324 U.S. 706-08; *Robert DeMario Jewelry*, 361 U.S. 292.

Defendants' brazen conduct since their meeting with WHD on January 5th, Alarcon Decl. ¶¶ 16-22, plainly is designed to, and did, interfere with the government's investigation, *id.* ¶ 22, and its power to gather full and accurate information regarding Defendants' compliance with the FLSA. *Id.* ¶ 23. As such, it jeopardizes the Department's ability to enforce the law and ensure that this vulnerable group of workers receives the full benefit of their labor. *Id.* Accordingly, the Secretary is likely to succeed on his claim that Defendants are in violation of section 11(a) of the FLSA. *See, e.g.*, *Walsh v. Serenitycare, LLC*, 2:22-CV-01028-CCW, 2022 WL 17974467, at *3 (W.D. Pa. Dec. 28, 2022) (finding FLSA section 11(a) violated where employer urged employees to disclaim back wages from the Department of Labor and make false statements to investigators); *BabyVision*, 2014 WL 5280392, at *2 (enjoining obstruction of DOL investigation "in any way," including instructing any individual "not to speak to representatives of the Secretary").

### B. The Secretary is likely to succeed on his claim that Defendants violated the FLSA's anti-retaliation provision.

The Secretary is likely to succeed on his claim that Defendants violated the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3). Under the FLSA, it is illegal for any person "to discharge or in any other manner discriminate against any employee because such employee has filed a complaint, or instituted, or caused to be instituted, any proceeding under, or related to this chapter, or has testified or is about to testify in any such proceeding. . . ." *Id.* The purpose of this provision was to "foster a climate in which compliance with the substantive provisions of the Act would be enhanced." *Robert DeMario Jewelry*, 361 U.S. 292. It does so "by preventing 'fear of economic retaliation' from inducing workers 'quietly to accept substandard conditions.'" *Kasten*, 563 U.S. 12 (quoting *Robert DeMario Jewelry*, 361 U.S. at 292). Put another way, the provision

is "designed to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act." *Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir. 1999)*, cert. denied* 528 U.S. 1116 (2000).

Claims of retaliation under the Act are analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Secretary v. Casey Truck Sales, Inc.*, 839 F.2d 872, 876 (2d Cir. 1988). To establish a *prima facie* case of retaliation under the FLSA, the Secretary need only show: (1) participation in activity protected by the FLSA; (2) an adverse employment action by a person; and (3) a causal connection between the protected activity and the person's adverse action. *Mullins*, 626 F.3d at 53. Here, the Secretary meets all of the required elements to establish a *prima facie* case of retaliation.

### 1.  *Participating Fully in the Secretary's Investigation is FLSA-Protected Activity*

The Supreme Court has repeatedly instructed that worker protection statutes such as the FLSA should be construed to "provide 'broad rather than narrow protection to the employee[.]'" *Kasten*, 563 U.S. at 13 (quoting *N.L.R.B. v. Scrivener*, 405 U.S. 117, 123 (1972)). Recognizing that "unchecked retaliation subverts the purpose of the FLSA," *Mullins*, 626 F.3d 55 (quoting *Hui Lin v. Great Rose Fashion, Inc.*, No. 08 Civ. 4778, 2009 WL 1544749, at *21 (E.D.N.Y. June 3, 2009)), in this Circuit, the FLSA's anti-retaliation provision has been applied to include activities "less directly connected to [those] formal proceedings" expressly enumerated in the statute, or to activities "where retaliatory conduct has a similar chilling effect on employees' assertion of rights." *Casey Truck Sales*, 839 F.2d at 879 (citing cases). *See, e.g.*, *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 113-14 (2d Cir. 2015) ("FLSA's remedial goals counsel in favor of construing the phrase 'filed any complaint' in section 215(a)(3) broadly, to include intra-company complaints to employers as well as complaints to government agencies."); *Casey Truck Sales*,

9

839 F.2d at 874, 879 (affirming retaliatory discharge based on employees' "refusal to take a 'loyalty oath' requiring them to repudiate their rights to these back wages."). *See also Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 269 (3d Cir. 2022) ("Section 15(a)(3) . . . protect[s] employees engaging in activities not spelled out in the statute.").

As set forth below, employees' participation in the Secretary's enforcement of the Act is plainly protected activity. First, employees have a right to speak truthfully to WHD during an investigation without fear of reprisal. Second, employees have the right to seek, receive and retain the amounts owed as a result of any WHD investigation, or put another way, employees may refuse to renounce the receipt of back wages due under the Act without fear of reprisal. It would render the anti-retaliation provisions meaningless if employees did not feel comfortable raising concerns about their working conditions to the Department. *Robert DeMario Jewelry*, 361 U.S. at 292. Likewise, "[p]rotection against discrimination for instituting FLSA proceedings would be worthless if an employee could be [retaliated against] for declining to give up the benefits he is due under the Act." *Casey*, 839 F.2d at 879.

### a.   <u>Speaking Truthfully to the DOL is Protected Activity</u>

Speaking truthfully to the Department is plainly protected activity under the Act. *See* 29 U.S.C. § 215(a)(3). At the outset, it is well-established that an oral complaint to the Department is protected activity under the Act's anti-retaliation provision. *See Kasten*, 563 U.S. at 12-15. That holding is largely rooted in the Act's remedial purpose and economic realities about the American workforce. *Id.* 11-12. Accordingly, the term "'testify' as used in [section 15(a)(3)] should be broadly construed to include participation in an investigation by the DOL." *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 14-CV-3616 (DRH)(GRB), 2016 WL 7335612, at *5 (E.D.N.Y. Dec. 16, 2016) (denying motion to dismiss 15(a)(3) claim based on employee's participation in Department

of Labor investigation). Courts in and outside of this Circuit have reached that conclusion. *See, e.g.*, *id.*; *Scalia v. Unforgettable Coatings, Inc.*, 455 F. Supp. 3d 987, 991 (D. Nev. 2020) (granting motion for preliminary injunction) ("The FLSA expressly prohibits retaliation against any employee for cooperating with an investigation under the FLSA."); *Perez v. ACME Universal, Inc.*, No. CV 12-00008, 2014 WL 1378241, at *3 (D. Guam Apr. 8, 2014) (denying motion to dismiss) ("employee's participation in the Secretary's investigation constitutes protected activity under the FLSA").[2]

Protecting workers who cooperate with the Secretary's investigations "encourage[s] workers to provide freely the information necessary for enforcement." *Perez v. Fatima/Zahra, Inc.*, No. C 14-2337 CW, 2014 WL 2154092, at *3 (N.D. Cal. May 22, 2014) (granting motion for temporary restraining order), *aff'd* 2014 WL 2854812 (June 20, 2014) (granting preliminary injunction). As such, the statute has been applied to protect both workers who have already "spoken [to DOL investigators] or were about to speak to DOL investigators in connection with that investigation," *Scalia v. F.W. Webb Co.*, No. 20-CV-11450-ADB, 2021 WL 1565508, at *4 (D. Mass. Apr. 21, 2021);[3] potential "witnesses identified in the investigative phase [of the

---

[2] This interpretation of section 15(a)(3) is consistent with courts' interpretation of the anti-retaliation provisions in numerous worker protection statutes. *See, e.g.*, *Scrivener*, 405 U.S. at 123 (NLRA) (affirming violation based on termination of employees who gave written sworn statements to a NLRB field examiner investigating unfair labor practice charge); *Perez v. U.S. Postal Serv.*, 76 F. Supp. 3d 1168, 1184 (OSH Act) (W.D. Wash. Feb. 13, 2015) ("It is undisputed that…accompanying OSHA inspectors on an inspection of" the workplace following a complaint is protected by the Occupational Safety and Health Act's anti-retaliation provision); *Patterson v. McCarron*, 99 CIV. 11078 (AGS), 2001 WL 1488122, at *3 (S.D.N.Y. Nov. 21, 2001) (ERISA) (meeting with, *inter alia*, Department investigators during investigation is protected).

[3] *See also, e.g.*, *Secretary v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 389 (E.D.N.Y. 2013) (finding retaliation where employer threatened employees with termination in anticipation of their testimony for Secretary of Labor). *Cf. Sauers v. Salt Lake Cty.*, 1 F.3d 1122, 1228 (10th Cir. 1993) (Title VII) (holding that "preemptive retaliation falls within the scope of Title VII" because "[a]ction taken against an individual in anticipation of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact[.]").

11

Secretary's enforcement action]," *Bowen v. M. Caratan, Inc.*, 142 F. Supp. 3d 1007, 1021-23 (E.D. Cal. 2015); and even "employees that Defendants perceived as cooperating with investigators." *Unforgettable Coatings*, 455 F. Supp. 3d at 992 (granting motion for preliminary injunction).[4] To hold otherwise would allow employers, like Defendants, "to intimidate their workers into silence." *Id*. at 991. As already discussed, this is precisely the outcome section 15(a)(3) was meant to combat. *See supra* pp. 8-9.

Accordingly, the FLSA permits Sunrise HHAs to cooperate in the Department's investigation of Defendants without fear of reprisal. That protection applies regardless of whether Sunrise HHAs had spoken to or were about to speak to WHD or simply were perceived as either having done so or as likely to do so.

### b. Receipt of Back Wages Owed as the Result of an Investigation is Protected Activity.

The right to full participation in the Department's investigation also includes the right to seek, receive and retain the payment of any back wages that are owed. *See Casey*, 839 F.2d at 879. As such, courts in and outside of this Circuit have found that employer schemes to rob employees of the back wages owed to them as a result of a WHD investigation constitute violations of section

---

[4] Courts have also extended 15(a)(3) to protect employees who did not engage in FLSA-protected activity but were nevertheless retaliated against because of their employers' mistaken belief that they had. *See, e.g.*, *Brock v. Richardson*, 812 F.2d 121, 124-25 (3d Cir. 1987) ("It is evident that the discharge of an employee in the mistaken belief that the employee has engaged in protected activity creates the same atmosphere of intimidation as does the discharge of an employee who did in fact complain of FLSA violations."). *Accord Saffels v. Rice*, 40 F.3d 1546, 1549-50 (8th Cir. 1994) (denying motion for summary judgment on 15(a)(3) claim where "reasonable jury could find that [employers] believed the plaintiffs were responsible for filing a complaint with OSHA and that their termination was motivated, at least in part, by that belief."), *rehearing en banc denied* (Feb. 3, 1995). *Cf. Reich v. Hoy Shoe Co., Inc.*, 32 F.3d 361, 368 (8th Cir. 1994) ("It would be a strange rule, indeed, that would protect an employee discharged because the employer actually *knew* he or she engaged in protected activity [under the Occupational Safety and Health Act] but would not protect an employee discharged because the employer merely *believed or suspected* he or she had engaged in protected activity.") (emphasis in original) (citing cases); *N.L.R.B. v. Ritchie Manuf. Co.*, 354 F.2d 90, 98 (8th Cir. 1996) (finding retaliation under the NLRA where employer fired an employee because of a belief that the employee was engaged in union activity)).

15(a)(3). For instance, 15(a)(3) has been applied to protect employees who were discharged because they refused to "take a 'loyalty oath' requiring them to repudiate their rights to … back wages[,]" *Casey*, 839 F.2d at 879; refused to release a back-pay claim, *Marshall v. Parking Co. of Am.-Denver*, 670 F.2d 141, 143 (10th Cir. 1982); or "insist[ed] upon receiving retroactive benefits under the Act" by refusing to endorse [a] back wage check back to [the] employer, *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179 (8th Cir. 1975) ("check endorsement scheme. . . was a patent violation of the Act. . . ."). *See also Lawrence*, 2016 WL 7335612, at *6 (denying motion to dismiss 15(a)(3) claim based on retaliation for "cashing the overtime check received as a result of the [DOL] investigation"). In fact, this protection has been applied to "check endorsement scheme[s]" that were "proved to exist" as well as those that were "only believed to exist" based on the employers' conduct. *Maxey's Yamaha*, 513 F.3d at 181-82 (protecting employee who refused employer's request that employees "endorse their back wage checks back to" the company "without actually receiving and retaining the check proceeds" even though "apparently these amounts were treated as loans to the company and later repaid").[5]

In this case, section 15(a)(3) both ensures Sunrise HHAs the right to seek and accept any back wages owed to them as a result of WHD's investigation and protects them from any of Defendants threatened schemes to deny them the benefit of the investigation. "To hold otherwise would defeat the Act's purpose in s[ection] 215(a)(3) of preventing employees' attempts to secure

---

[5] Similarly, courts have required employers to make employees whole after they "succumbed to the employers' unlawful tactics and returned their back wages." *Donovan v. Rockwell Tire & Fuel, Inc.*, No. C-79-498, 1982 WL 2120, at *5, 9 (M.D. N.C. Mar. 30, 1982) (violation of 15(a)(3) where employee returned his back wages on threat of termination if he retained them), *aff'd* 711 F.2d 1050 (4th Cir. 1983). *See also Marshall v. Quik-Trip Corp.*, 672 F.2d 801, 806-08 (10th Cir. 1982) (noting, without deciding, that employees' refusal to accept back wages due to them could be viewed as coercive and involuntary); *Hodgson v. Yinger*, No. 70-1818-Civ-CA, 1971 WL 762, at *2-3 (S.D. Fla. July 9, 1971) (requiring employer to pay employee who returned his wages involuntarily on perceived threat of termination).

13

their rights under the Act from taking on the character of a 'calculated risk.'" *Maxey's Yamaha*, 513 F.3d at 181 (quoting *Robert DeMario Jewelry*, 361 U.S. 288).

### 2. Defendants Engaged in Numerous Adverse Employment Actions.

Defendants' threats and other intimidating and coercive measures are adverse actions under the FLSA. An adverse employment action is one that disadvantages an employee if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" or other violation of the employee's statutory rights. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (Title VII) (internal quotation omitted, citation omitted). *Accord Mullins*, 626 F.3d at 53. "Thus, the category of conduct that constitutes actionable retaliation includes more than just 'adverse employment actions' or 'ultimate employment decisions.'" *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008) (quoting *Wright v. Stern*, 450 F. Supp. 2d 335, 373 (S.D.N.Y. 2006)). In this Circuit, Section 15(a)(3) violations include activities "where retaliatory conduct has a . . . chilling effect on employees' assertion of rights." *Casey*, 839 F.2d at 879. *See also supra* pp. 8-11. As set forth below, Defendants' recent actions include four categories of adverse actions which, both separately and together, would dissuade a reasonable worker from asserting their rights under the FLSA.

First, Defendant Silva's instruction that Sunrise HHAs tell her about their role in the investigation, or specifically their contact with the WHD, Alarcon Decl. ¶ 17, constitutes an adverse action. In the employment context, courts have recognized that certain types of questions can be coercive and even unlawful. Asking employees "to notify [employer] representatives if the DOL contacted them" during a FLSA investigation, has been found to constitute adverse action. *F.W. Webb*, 2021 WL 1565508, at *4-5 (denying motion to dismiss 15(a)(3) claim) (concluding that the "timing, content and tone" of such requests "might well dissuade a reasonable employee

from engaging in protected activity."). *Cf. ABC Indus. Laundry, LLC*, 355 NLRB 88, 97 (2010) (questions "designed to uncover employees' union sympathies and activities and those of their fellow employees, were among those the Board has typically found to be coercive and unlawful"). These cases compel a similar finding here: the timing, content and tone of Defendant's Silva's questions about HHAs' contacts with WHD are plainly coercive and might well dissuade a reasonable employee from participating in the investigation.

Significantly, Defendant Silva's questions about HHAs' contacts with WHD put them in a double bind. That is to say, any HHA who had in fact spoken to investigators could either (1) tell her, their boss, that they had spoken with the government, which would eliminate the protection afforded to them as a confidential informant, *see Roviaro v. United States*, 353 U.S. 53, 59-60 (1957), and possibly draw retaliation; or (2) lie to their boss about having spoken to investigators. This untenable situation was exacerbated by Defendants' pointed interest in identifying a presumed complainant. Alarcon Decl. ¶ 17. In this context, Defendants' questions about HHAs' contacts with WHD, including those by a presumed complainant, *id.*, would reasonably dissuade Sunrise HHAs from contacting the WHD and is an adverse action. *See supra* pp. 10-11 (speaking truthfully to WHD is protected activity).

Second, Defendants' explicit directions that HHAs lie to the government about their wages and hours, both verbally and in writing, Alarcon Decl. ¶ 21, constitutes an adverse action. *See Serenitycare*, 2022 WL 17974467, at *3 (finding 15(a)(3) violation where employer, *inter alia*, urged employees to "make false statements to investigators"). That is because instructing employees to lie during an investigation carries with it an "implicit threat" that "would reasonably

dissuade an employee from exercising their rights under the FLSA." [6] *Id.*

Third, Defendants' effort to pressure Sunrise HHAs to agree preemptively to renounce their right to any monies owing to them as a result of the WHD investigation, Alarcon Decl. ¶ 22, constitutes an adverse action. *Serenitycare*, 2022 WL 17974467, at *3. Where, as here, an employer "urges [employees who sought or were about to seek back wages from the Department of Labor] to disclaim back wages and make false statements to investigators" the employer commits an "adverse action because the implicit threat in [the employer's] actions would reasonably dissuade an employee from exercising their rights under the FLSA." *Id.* [7] *See also supra* pp. 12-13 (discussing employer schemes to force employees to renounce their right to back wages).

Finally, Defendants committed adverse actions when Defendant Silva implicitly and explicitly threatened Sunrise HHAs with negative consequences stemming from the investigation and their role in it. To underscore the threats to any HHA who dared not to comply with the above requests, Defendant Silva made explicit promises of job loss and court action. Alarcon Decl. ¶¶ 19-20.  Silva told HHAs that if the investigation resulted in Defendants having to pay overtime,

---

[6] *See also, e.g.*, *Unforgettable Coatings*, 455 F. Supp. 3d 991-92 (granting preliminary injunction based on *inter alia* on employer efforts to "actively manipulate [employees] to provide false information to the government's investigators); *Harris v. ACME Universal, Inc.*, No. CV 12-00008, 2014 WL 1378241, at *5 (D. Guam Aug. 11, 2014) (granting motion for protective order and preliminary injunction where, *inter alia*, Secretary provided evidence of "pressuring current employees to sign compliance statements and lie to investigators or else forfeit substantial deposits"); *Perez v. Alkanan, Inc.*, CV-13-09228 GAF (JEMx), 2013 WL 12129857, at *1-2 (C.D. Cal. Dec. 16, 2013) (issuing temporary restraining order in FLSA retaliation case based on, *inter alia*, evidence that Defendant "repeatedly instructed his employees to provide false information to the [WHD] investigator" on threat of harm).
[7] Numerous courts have found such conduct is coercive. *See Quik-Trip Corp.*, 672 F.2d 806 (requiring employees, "who were economically dependent on the company," to collect back wage checks from the district manager who informed them that he did not believe that the company was liable for the violations and other employees had torn up their checks "could be viewed as coercive"); *Maxey's Yamaha,* 513 F.2d 182 (employers' requests that employees endorse back wage checks back to the company were "coercive tactics" and "it was incumbent upon the employer to…dispel and correct any coercive atmosphere or erroneous impression [such tactics] might have formed in the minds of the employees."); *Yinger*, 1971 WL 762, at *3 (finding that employee was "coerced by defendants into a Hobson's choice of returning his back wages or losing his job.").

she would have to close the business and they would lose their jobs. *Id.* ¶ 19. As the Second Circuit has explained, there is "little doubt" that actions that carry the "possibility of termination" disadvantage employees. *Mullins*, 626 F.3d at 54. By the same logic, so too do threats of court proceedings. Alarcon Decl. ¶ 20.

Overall, Silva's recent conduct has permeated Defendants' workplace with threats, coercion, and intimidation and created a chilling environment. *Casey*, 839 F.2d at 879 (Sec. 15(a)(3) violations include "where retaliatory conduct has a . . . chilling effect on employees' assertion of rights."); *Figueroa v. Cactus Mexican Grill, LLC*, 575 F. Supp. 3d 208, 211, 217-18 (denying motion to dismiss private 15(a)(3) claim) ("Taken as a whole" allegations that "defendants instructed plaintiff not to participate in the DOL investigation[,]" threatened termination if she did, and "pressured" her with respect to back wages owing as a result of the investigation "plausibly allege claims of retaliation"). Defendants' requests for loyalty and lies, under threat of job loss and other negative consequences, put HHAs in a position fraught with risk and bad choices in all directions. Why risk cooperation if, in the best-case scenario, the investigation would result in back pay, which Defendants would just take back anyway?

### 3. The Causal Connection Between Protected Activity and the Adverse Actions Is Clear.

It is well established that a causal connection may be based on direct or circumstantial evidence, including "evidence of retaliatory animus directed against a plaintiff by the defendant, or by showing that the protected activity was closely followed in time by the adverse action." *Mullins*, 626 F.3d at 53 (internal quotations and citations omitted). These facts establish a direct causal connection between the protected activity and the adverse actions. Because all of Defendants' coercive and threatening actions squarely concern the WHD investigation, and specifically HHAs' presumed participation in it,

"the link is self-evident" and the "sequence, timing and nature of events only reinforces the connection." *Mullins*, 626 F.3d at 55.

Defendants commenced their intimidation tactics and threats precisely *because* they believed that Sunrise HHAs were engaged in or were about to engage in protected activity by talking to the WHD. *Supra* pp. 10-11. Within days of first learning about WHD's investigation, Defendant Silva took steps to deter and control Sunrise HHAs' cooperation in it. Alarcon Decl. ¶ 16. A mere eight days after WHD informed Defendants about the investigation, counsel for the Secretary contacted Defendants' counsel to relay concerns about reports of retaliatory conduct including obstruction, intimidation, instructions to provide false information to WHD and threats of kickbacks. Bowles Decl. ¶ 2, Ex. A. This timeline leaves no doubt of a causal connection. *See, e.g.*, *Serenitycare*, 2022 WL 17974467, at *3 (concluding that causation was established where employer urged numerous employees who "sought or were about to seek back wages from the Department of Labor . . . to disclaim back wages and make false statements to investigators"); *Hugler v. Foreclosure Connection, Inc.*, No. 2:15-cv-00653-DAK, 2017 WL 2168202, at * 17 (D. Utah May 8, 2017) (retaliatory conduct "within a day of complaint to WHD" supports causal connection), *aff'd sub nom Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132 (2018). Moreover, Defendant Silva's pointed interest in uncovering the identity of a presumed complainant, through numerous pressure tactics, Alarcon Decl. ¶ 17, is evidence of retaliatory animus.

*     *     *

In sum, the Secretary has overwhelmingly established a likelihood of success on the Secretary's claim that Defendants have violated section 15(a)(3) of the Act.

## II.   SUNRISE HHAs, THE DEPARTMENT OF LABOR, AND THE PUBLIC WILL SUFFER IRREPARABLE HARM ABSENT A TEMPORARY RESTRAINING ORDER.

Retaliatory conduct that tends to deter employees from asserting their rights or supporting another's assertion of rights constitutes irreparable harm for purposes of preliminary injunctive relief. *See Mullins*, 626 F.3d at 55; *Unforgettable Coatings, Inc.*, 455 F. Supp. 3d at 992 ("Employees will likely be irreparably harmed by the chilling and deterrent effect that results from retaliation against those who seek to enforce their rights."); *Fatima/Zahra*, 2014 WL 2154092, at *3 (granting temporary restraining order and finding irreparable harm where Defendants "threats appear to have chilled Defendants' employees from speaking to [WHD investigators]").[8] Similarly, because, as noted, "[u]nchecked retaliation subverts the purpose of the FLSA," the Second Circuit has held that "the resulting weakened enforcement of federal law can *itself* be irreparable harm" where there is "some evidence of actual chill that would be cured by the requested injunction." *Mullins*, 626 F.3d at 55 (emphasis in original). Here, as set forth below, an injunction is appropriate because there is a threat of irreparable harm to Sunrise HHAs, to the Department of Labor, and to the public.

### A.   Sunrise HHAs will suffer irreparable harm absent an injunction.

Because Defendants' threats and intimidation tactics are reasonably likely to deter HHAs from participating fully in the Secretary's enforcement action, *supra* pp. 13-17, injunctive relief should be granted. Indeed, Defendants' coercive and intimidating conduct has already negatively

---

[8] *See also*, *e.g.*, *Walsh v. Berkshire Nursery & Supply Corp.*, 7:23-cv-00275-VB, Order Granting Temporary Restraining Order and Order to Show Cause (S.D.N.Y. Jan. 18, 2023) (enjoining employers from violating FLSA sections 11(a) and 15(a)(3)); *Walsh v. ABC 31st Street, Inc.*, 1:22-cv-03920-LDH-RLM, Memorandum and Order, (E.D.N.Y. July 7, 2022) (same); *Walsh v. Advantix Logistics, Corp.*, 2:22-cv-02257, Order Granting Temporary Restraining Order and Order to Show Cause, (D N.J. April 19, 2022) (same).

impacted the Secretary's investigation. Alarcon Decl. ¶¶ 23-24. The decision to cooperate in a government investigation can be fraught in the best of circumstances, but especially for low wage workers like Sunrise HHAs. *Id.* ¶ 18. *Cf. Robert DeMario Jewelry, Inc.*, 361 U.S. at 292 ("[F]ear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions."). Defendant Silva's attempts to manipulate and interfere in the WHD investigation inherently chills employee cooperation. Alarcon Decl. ¶¶ 16-24. Defendants' threats of job losses and court action, *id.*1-20, are outrageous and illegal and must end immediately so that the Secretary can continue this investigation and enforcement action unimpeded.

With the filing of this motion and the Complaint, there is now a heightened risk of Defendants continuing their retaliation and intimidation and threats to HHAs, including as witnesses in support of the Secretary's enforcement action. *See, e.g.*, *Mullins*, 626 F.3d 55 (upholding preliminary injunction based on evidence that "absent injunctive relief numerous plaintiffs would likely (and reasonably) withdraw from this litigation . . . .") (internal quotation and citation omitted); *Black*, 2022 WL 17689840, at *6 (granting preliminary injunction based on, *inter alia*, "potential to 'chill' other present and former employees from seeking their rights against Defendants or testifying in support of Plaintiff's claims") (citing *Centeno-Bernuy*, 302 F. Supp. at 135). Defendant Silva has already shown that, without assurances from this Court that HHAs who refuse to repudiate their rights are protected, she will continue to harass and intimidate HHAs, including into attempting to waive their rights to the protections of the Act by forfeiting any potential back wages under the threat of kickbacks. Alarcon Decl. ¶¶ 17, 22; Bowles Decl. ¶ 2.

Notably, Defendant Silva commenced her unlawful conduct almost immediately after WHD provided written and verbal notice of the FLSA's anti-retaliation prohibition to her. *Id.* ¶ 16. Indeed, not even a letter from the Secretary's attorney to counsel for Defendant relaying

allegations of retaliatory conduct was adequate to stop Defendant Silva from continuing to communicate with HHAs about the investigation. Bowles Decl. ¶ 2; Alarcon Decl. ¶ 17. Accordingly, without injunctive relief it is highly likely Defendants will subject employees to even more severe intimidation and retaliation. *See generally Mullins*, 626 F.3d at 55 ("retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights….") (quoting *Holt v. Continental Grp., Inc.*, 708 F.2d 87, 91 (2d Cir. 1983)). Likewise, should WHD ultimately determine that Defendants violated the minimum wage, overtime and/or recordkeeping provisions of the Act, 29 U.S.C. §§ 206-07, 211, it is reasonable to expect that Defendant Silva will carry through with her threat to conceal Defendants' continued non-compliance by forcing employees to return or "kick back" any monies found owing.

If unchecked, Defendants' interference with the Department's ability to fully investigate and prosecute this matter effectively will deprive employees of their rights under the FLSA and force them to accept less than is owed to them under the Act. Without sufficient information from cooperating employees, for instance, the Department is often unable to determine whether an employer's pay and time records are accurate, among other areas of employer compliance. *See, e.g.*, *Fatima/Zahra*, 2014 WL 2154092, at *3 ("If Defendants are able to block Plaintiff's investigation, then Defendants' employees's [sic] rights under the FLSA may be irreparably injured."); *cf. Garcia v. Lee*, No. 10-CV-1618 (JG), 2010 WL 2102903, at *3 (E.D.N.Y. May 26, 2010) ("The mere threat of further retaliation . . . could end this potentially meritorious lawsuit at an early stage if enough of them refuse to testify because they conclude that a job paying unlawfully low wages is better than no job at all."); *Centeno-Bernuy*, 302 F. Supp. 2d 135 (irreparable harm to employees because employer's threats of arrest and deportation chills employees' assertion of their FLSA rights). *See also* Alarcon Decl. ¶ 24.

21

**B. The Secretary's enforcement of the FLSA will suffer irreparable harm without an injunction.**

Absent an injunction, the Secretary's enforcement efforts will also be irreparably harmed. As discussed in full above, *supra* § I.A, section 11 of the Act authorizes the WHD to conduct investigations of employers' pay practices, including by "question[ing] . . . employees" and "investigat[ing] such facts, conditions, practices or matters as" necessary to determine compliance with the Act's various pay and recordkeeping requirements. 29 U.S.C. § 211(a). As such, enforcement of the FLSA's protections relies, not on mandatory reporting or monitoring requirements, but on the employees who come to work every day, *Kasten*, 563 U.S. at 11-12, sometimes to labor under unlawful conditions. *See supra* §§ I.A, B.1.a. "Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances." *Robert DeMario Jewelry*, 361 U.S. at 292; *see also* Alarcon Decl. ¶ 24 ("When employers interfere in WHD's ability to meet with or interview employees, engage in threats of retaliation, or coach employees' responses, WHD's ability to determine employers' compliance with federal worker protection laws can be severely jeopardized.").

In turn, Defendants' intimidation of Sunrise HHAs poses a clear and direct threat to the Secretary of Labor's ability to enforce the law. Alarcon Decl. ¶¶ 23-24. *See Mullins*, 626 F.3d at 55 ("the resulting weakened enforcement of federal law can *itself* be irreparable harm") (emphasis in original) (quoting *Hui Lin v. Great Rose Fashion, Inc.*, No. 08-CV-4778 (NGG)(RLM), 2009 WL 1544749, at *21 (E.D.N.Y. June 3, 2009); *Walsh v. Caribbean Island Rest. & Bar, LLC*, No. 22-CV-4054 (ARR)(JST), 2022 WL 2713725, at *2 (E.D.N.Y. July 13, 2022) (irreparable harm because as a result of employer's obstruction, the Secretary "will be unable to conduct a full and complete investigation of defendants labor practices"); *ACME Universal, Inc.*, 2014 WL 3907107, at *7 (irreparable harm to the Secretary because employer's "coercive and threatening tactics have

caused the Plaintiff to lose contact with at least one former employee, thus limiting the [Secretary's] ability to effectively prosecute this case"); *Fatima/Zahra*, 2014 WL 2154092, at *3 (irreparable harm because "should [the employer's threats continue" the Secretary "will not be able to gather the information necessary to conduct the investigation.").

In sum, the Secretary's enforcement efforts depend on the willingness of employees to participate in FLSA investigations and prosecutions. Employees will be far less forthcoming if they can only do so under the close watch of an employer who has threatened harm. *See id.*; *Unforgettable Coatings, Inc.*, 455 F. Supp. 3d at 992 ("Should Defendants' threats, intimidation, tactics, and retaliatory conduct continue, [the Secretary] will not be able to adequately investigate the alleged misconduct and will likely suffer irreparable injury as a result."). Thus, absent an injunction, the Secretary will suffer irreparable harm because the injury is "actual and imminent", and one that "cannot be remedied if a court waits until the end of trial to resolve the harm." *Black*, 2022 WL 17689840, at *5 (quoting *Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012)).

## III.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST STRONGLY FAVORS ISSUANCE OF AN INJUNCTION.

Finally, the balance of equities and public interest unquestionably favors an issuance of an injunction when, as here, Defendants will not face any harm from the requested provisional relief and the public interest weighs heavily in favor of enjoining their unlawful conduct.

### A.  Defendants will face no harm from the Secretary's requested relief.

Defendants have absolutely no legitimate interest in threatening employees or taking other adverse action to intimidate them from participating in protected activities such as speaking truthfully with the Department's investigators or receiving any future benefit of the investigation. *E.g.*, *Black*, 2022 WL 17689840, at *6 ("Because Defendants have failed to articulate any

legitimate hardship that [they] would face from an injunction that would tip the scales in their favor, this factor support's Plaintiff's motion for a preliminary injunction.") (citing *Centeno-Bernuy*, 302 F. Supp. 2d at 137)); *Unforgettable Coatings, Inc.*, 455 F. Supp. 3d at 992 (finding that balance of hardships weighed in Secretary's favor because "Defendants have no legitimate interest in threatening, intimidating, or otherwise retaliating against Plaintiffs in direct contravention of their rights under the FLSA"). Nor do Defendants have any legitimate interest in interfering in the Secretary's civil law enforcement investigation pursuant to statutory authority. 29 U.S.C. § 211(a).

Insofar as the principal portion of the Secretary's requested relief "requires" only that Defendants "follow the law," as a matter of law the order "causes no harm" to Defendants. *United States v. Pugh*, No. 07-cv-2456, 2007 WL 3539435, at *8 (E.D.N.Y. Nov. 14, 2007). *See also, e.g.*, *Black*, 2022 WL 17689840, at *6 (concluding that "Defendants will suffer little hardship, if any, from a narrowly tailored injunction, but [former employee] Plaintiff will suffer the risk of irreparable harm if [employers] are not enjoined" from retaliation). Given the harm already caused to date, the Secretary also requests limited additional relief, narrowly tailored to Defendants' actions. As set forth in the proposed order, the Secretary requests that Defendants be required to take corrective action to address the chilling effect that has already occurred and ensure that former and current HHAs are aware of their rights to communicate freely with the Secretary's representatives and receive any back wages owed to them as a result of the investigation.

The Secretary also seeks a short notice period of seven days before Defendants terminate any employees, so that the Secretary may confer with Defendants to avoid any further harm to Sunrise HHAs and ensure that any termination is not retaliatory. Courts regularly grant such requested relief, which will cause Defendants no cognizable harm. *E.g.*, *Unforgettable Coatings*,

455 F. Supp. 3d at 994 (preliminary injunctions issued requiring defendants to notify employees of their rights and requiring advance notice to the Secretary's representatives before terminating employees); *Fatima/Zahra*, 2014 WL 2854812, at *6 (same); *Perez v. AAA Buffet, Inc.*, No. 16-05360, 2016 WL 9526503, *2 (W.D. Wash. Dec. 20, 2016) (same); *Perez v. J&L Metal Polishing, Inc.*, No. SACV15-1957, 2016 WL 7655766, at *8 (C.D. Cal. May 9, 2016) (same). To the extent that Defendant would face any minimal burden in complying with this temporary relief, it is heavily outweighed by the public interest.

### B. The public interest weighs heavily in favor of granting the Secretary's requested relief.

In considering the public interest with respect to the Secretary's requested relief, "the district court must give substantial weight to the fact that the Secretary seeks to vindicate a public, and not a private, right." *Marshall v. Chala Enters., Inc.*, 645 F.2d 799, 804 (9th Cir. 1981). As discussed in detail above, the Secretary cannot fulfill his statutorily mandated obligation to enforce the FLSA's worker-protection provisions without the ability to rely on employees' cooperation. *See supra* § I.A., I.B.1.a. *See also, e.g.*, *Secretary v. SCA Rest. Corp.*, No. 09-CV-2212 JFB ETB, 2014 WL 996249, at *4-5 (E.D.N.Y. Mar. 14, 2014) (sanctioning employers for retaliating against, and thereby tampering with, the Secretary's witnesses in a FLSA action). *Cf. Black*, 2022 WL 17689840, at *7 (holding, in private FLSA suit, that "preventing further retaliation by Defendants helps enforce the FLSA . . . . and, consequently, serves the public interest.").

Moreover, there is a strong public interest in ensuring that employers do not gain a competitive advantage over law-abiding competitors who are undercut by unfair and unlawful business practices. *See* 29 U.S.C. § 202(a); *Citicorp Indus. Credit, Inc. v. Brock*, 483 U.S. 27, 36 (1987) (discussing Congressional intent to "eliminate the competitive advantage enjoyed by goods produced under substandard [labor] conditions"); *Donovan v. Sovereign Security, Ltd.*, 726 F. 2d

55, 58 (2d Cir. 1984) ("The purposes of the restitutionary injunction under section 17 are to make whole employees. . . and to eliminate the competitive advantage enjoyed by employers who have illegally underpaid their workers."); *Herman v. Fashion Headquarters, Inc.*, 992 F. Supp. 677, 679 (S.D.N.Y. 1998).

The Secretary's requested injunction is necessary to obtain Defendants' compliance with the Act's anti-retaliation provisions and is well within the sound discretion of this court. *See Casey*, 839 F.2d at 879 (explaining that district courts have "broad equitable powers to restrain violations" of the anti-retaliation provisions of the FLSA, including, *inter alia*, an injunction against future violations of the Act). Entry of the Secretary's requested injunction is plainly in the public interest.

\*   \*   \*

Taken together, all three factors weigh strongly in favor of entry of the Secretary's requested relief, and this Court should exercise its sound discretion to issue the requested relief.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully asks the Court to: (1) enter the following temporary restraining order prohibiting any Defendant from any further retaliation against or intimidation of any HHAs, and further obstruction and interference with the Department's investigation, in violation of the FLSA; and (2) order Defendants to show cause why a similar preliminary injunction should not be issued after a hearing. Specifically, the Secretary requests that this Court restrain Defendants, their officers, employees, agents, successors, and all persons acting or claiming to act in their behalf and interest as follows:

1.  Violating the provisions of section 15(a)(3) of the FLSA;

2.  Terminating or threatening to terminate employment, blacklisting or threatening future employment, contacting immigration authorities or other law enforcement or threatening to contact law enforcement, withholding wages or threatening to withhold wages, reducing hours or threatening to reduce hours, intimidating,

coercing, threatening, or retaliating or discriminating against HHAs in any other way, to prevent or otherwise dissuade any HHA from speaking with or participating in the Department's investigation or engaged in any other protected activity under the Act;

3.      Terminating or threatening to terminate employment, blacklisting or threatening future employment, contacting immigration authorities or other law enforcement or threatening to contact law enforcement, withholding wages or threatening to withhold wages, reducing hours or threatening to reduce hours, intimidating, coercing, threatening, or retaliating or discriminating against Sunrise HHAs in any other way, based on Defendants' belief that any such HHA has participated in the Department's investigation or engaged in any other protected activity under the Act;

4.      Obstructing and interfering with the Secretary's investigation of Defendants in any way;

5.      Telling any Sunrise HHAs not to cooperate with the Secretary's representatives; instructing any HHAs to provide incomplete or false information to the Secretary's representatives; or questioning HHAs about their cooperation or communications with the Secretary's representatives;

6.      Advising any current and former Sunrise HHAs that they must agree to return or "kick back," to Defendants any back wages the Department may determine Defendants owe as a result of the investigation;

7.      Communicating with any Sunrise HHA regarding the Secretary's investigation without first informing the HHA, in writing and in the HHA's primary language, that HHAs may communicate with the Secretary and his representatives voluntarily and free from coercion, and that HHAs cannot be discriminated against or retaliated against for communicating with the Secretary's representatives;

8.      Terminating any HHA without providing at least seven days' notice to the Wage and Hour Division of the U.S. Department of Labor prior to any termination;

9.      Requiring that within seven days of the Court's Order to Show Cause, Defendants shall allow representatives of the Secretary to read aloud in English, Spanish, Portuguese, and any other language as necessary to be understood by Defendants' HHAs, during HHAs' paid working hours, the following statement to all HHAs employed by Defendants, and in the presence of Defendant Silva:

**You are protected by the Fair Labor Standards Act and have the right to participate freely in the U.S. Department of Labor's investigation**

27

**into Sunrise Home Care, Inc. and Elsa Silva practices.  You have the right to speak freely with investigators, attorneys, or other officials from the Department of Labor. Sunrise Home Care, Elsa Silva, and any person acting on behalf of the company or Ms. Silva, are prohibited from retaliating against you in any way, including by threatening harm to you or your families, terminating you, reporting you to immigration, or threatening to do any of these things because you spoke with the Department of Labor.**

**In the event the Department of Labor's investigation results in a determination that an employer owes back wages to employees, those employees have a right to receive and keep the full amount of any back wages (after taxes) due to them. It is against the law for an Employer or any person acting on their behalf to ask for this money back or ask employees to give up their current or future wages to get money from the investigation. Employers may not require any worker who receives back wages from the Department to return or "kick back" those monies to the employer.**

**The U.S. District Court for the Southern District of New York has ordered Defendants Sunrise Home Care Inc. and Elsa Silva and anyone acting on their behalf to cease coercing, retaliating against, threatening to retaliate against, intimidating, or attempting to influence or in any way threatening current and former home health aides for providing information to the Department of Labor.**

10.  Requiring that within seven days of the Court's Order to Show Cause, Defendants shall mail a hard copy of the above statement, in English, Spanish, Portuguese, and other language as necessary to be understood by Defendants' HHAs, to all current and former employees at their last known addresses, along with contact information for representatives of the Secretary (to be provided by the Secretary's representatives); and

11.  Ordering all such other relief as may be appropriate, just, and proper.

DATED:   February 24, 2023
         New York, New York

                              Respectfully submitted,

                              SEEMA NANDA
                              Solicitor of Labor

                              JEFFREY S. ROGOFF
                              Regional Solicitor

28

S/Allison L. Bowles
ALLISON L. BOWLES
Senior Trial Attorney

U.S. Department of Labor
Office of the Solicitor
201 Varick Street, Room 983
New York, NY 10014
Tel: 646.264.3658
Bowles.allison@dol.gov
NY-SOL-ECF@dol.gov

*Attorneys for Plaintiff Martin J. Walsh, Secretary of Labor*

29